**STATE OF VERMONT**

**ENVIRONMENTAL COURT**

Appeal of Bowers, <u>et al.</u>   }
                                  }
                                  }   Docket No. 201-9-02 Vtec
                                  }
                                  }

**<u>Decision and Order on Cross-Motions for Summary Judgment</u>**

Appellants Dave Bowers, Norm Burnett, Dean Ruhl and Mary Ellen Ruhl appealed from a decision of the City of Winooski Development Review Board (DRB) that Applicants Ernest and Shirley Nolin's proposed use of 156 Main Street for the repair of motor vehicles is a pre-existing non-conforming use which may continue without a change of use permit. Appellants are represented by John W. O'Donnell, Esq; the City is represented by Kristin C. Wright, Esq. Applicants did not enter their appearance in this matter.

The parties have moved for summary judgment on the issues of whether Applicants' garage was itself a preexisting non-conforming motor vehicle service station use, or was only an accessory use to the prior owner's service station, whether Applicants' use should have been treated as having been abandoned when that other service station was torn down, and whether Applicants' proposal is an improper reestablishment of an abandoned non-conforming use. The following facts are undisputed unless otherwise noted.

Applicants purchased the property at 156 Main Street in 1993 from the former owner, Paul Dufresne. It is located behind another structure that faces Main Street, which has the address of 154 Main Street. As described in the DRB's Notice of Decision, in 2002, Applicants applied to the DRB for a change in the garage building's non-conforming use from a 'garage' use to a use allowing storage and light repair and maintenance of personal and business vehicles, including oil changes and some painting of vehicles. The DRB's ruling on that application is the subject of the present appeal.

Applicants' property contains a 78' x 27' multiple-bay garage building ("the garage building"). It was first built as a four-bay garage, measuring 48' x 27', about fifteen years prior to adoption of the City's first zoning ordinance in 1981. It was enlarged by thirty feet[5] under a permit granted to Mr. Dufresne in 1982. The property is located on the west side of Main Street in what is now the R-2 Medium Density Residential zoning district. The garage building was used over time for the repair of motor vehicles, and for storage of vehicles and other items. Material facts are in dispute, or at least have not been established on summary judgment, as to the extent of and time frames for the motor vehicle repair use of the garage building, as opposed to the motor vehicle storage or other storage uses of the garage building. Material facts are in dispute, or at least have not been established on summary judgment, as to what, if any, facilities the garage building contains for lubricating, washing or servicing motor vehicles.

Mr. Dufresne also owned and operated a fuel oil and gasoline service station on another parcel of land at 147 Main Street, across Main Street from the 154-156 Main Street property. The City first adopted a zoning ordinance in 1981, under which the use category of ' motor vehicle service station' is defined as land " including the buildings thereon, which is used for the sale of any motor vehicle fuel, [or] lubricant, or which has the proper facilities for lubricating, washing or servicing motor vehicles by any means." Under the zoning ordinance, this use category was not a permitted or a conditional use in the R-2 zoning district. Thus, as of the adoption of the 1981 zoning ordinance, if the garage building at 154 Main Street was then being used for and had the proper facilities for lubricating, washing or servicing motor vehicles, the ' motor vehicle service station' use of the property became a pre-existing non-conforming use as defined by § 2.040 of the Zoning Ordinance and therefore became subject to the provisions of § 8.400 et seq.

In 1982, Paul Dufresne applied to the then-Zoning Board of Adjustment for approval to enlarge the garage building by adding a thirty-foot section. In that application he referred to it as a " storage garage" and stated that the extension was to create indoor storage space for items then stored outside: " oil barrels, signs, steel, display materials, trailer, truck, etc." He stated in the application that these items were " used in conjunction with my fuel oil and service station business;" that is, the business across the street at 147 Main Street. The then-ZBA approved the thirty-foot building enlargement as a variance, without stating explicitly what dimensional requirements of the zoning regulations could not be met by the expanded building. The ZBA minutes discussing this application for the thirty-foot expansion of the building do not discuss the fact that the use of the building was also non-conforming.

The ZBA in 1982 should also have addressed Mr. Dufresne' s application as an enlargement or extension of a non-conforming use under § 8.402. In addition, if at that time Mr. Dufresne was converting (or had already converted) the use of the garage building to the storage of motor vehicles and other items, but was not conducting the repair of vehicles there, then under § 8.404 the ZBA should also have ruled on the change of the motor vehicle repair use to the storage use, and should have determined whether the changed use met the conditional use approval standards and whether it was ' more appropriate to the zoning district' than the previous use for motor vehicle repair.

Appellants argue that Mr. Dufresne' s use of the garage building was as an accessory use to his 147 Main Street fuel oil and service station business, and that therefore it necessarily lapsed when he sold that business. However, the question of whether the non-conforming use of the garage building for motor vehicle service lapsed under § 8.405 of the Zoning Regulations is entirely independent of whether it was or was not an accessory use. Rather, that question depends on what actual use was made of and what facilities were contained within the garage building from 1981 onward, and whether the motor vehicle servicing use of the building was discontinued for more than six months at any time between 1981 and Applicants' 2002 permit application.

In fact, Mr. Dufresne' s use of the garage building could not have been classified as an accessory use to his 147 Main Street fuel oil and service station business, because an accessory use must be located on the same lot as the principal use. § 2.001. Accordingly, summary judgment is granted to the City on this issue.

At some time between 1986 and 1991, Mr. Dufresne discontinued use of and sold the 147 Main Street gasoline service station, but continued to own and use the 156 Main Street garage building. The 147 Main Street building was demolished and a new building was constructed by the subsequent owner. Material facts are in dispute as to the use made of the garage building after 1986; that is, to what extent it has been used merely for the storage of private vehicles, and to what extent it has been used or contains facilities for motor vehicle repair and maintenance.

Accordingly, based on the foregoing, it is hereby ORDERED and ADJUDGED that both motions for summary judgment are DENIED as material facts are in dispute, except that the City's motion is GRANTED that the use of the garage building was and is not an accessory use to the use of the property at 147 Main Street.

We will hold a conference in person at the Costello Courthouse on Cherry Street in Burlington at 9:30 a.m. on Thursday, March 6, 2003, to discuss the remaining issues and whether this appeal should be set for trial or whether it should be remanded to the DRB for it to hold a hearing and rule under §§ 8.402, 8.404 and/or 8.405. We are scheduling this matter in person rather than by telephone to enable the Nolins to decide whether they wish to participate in the conference or to come into this case as parties, as they may not understand that their application could be denied in this proceeding.

Done at Barre, Vermont, this 14th day of February, 2003.

_____

Merideth Wright
Environmental Judge

## Footnotes

[1]   Their name is spelled as 'Nolin' on some documents and as 'Nolan' on others. As they have not entered their appearance and no party has submitted their permit application, we have no way to determine the correct spelling, and have used the spelling shown on the DRB Notice of Decision.

[2]   We must note that Question 1 of the Statement of Questions is stated as whether the DRB's decision "to approve a zoning variance" for Applicants was "legal and appropriate." However, it appears from the DRB's Notice of Decision that the DRB considered the application under §8.402 as a change in use to a non-conforming use and a non-complying structure. Please submit any motions to amend the Statement of Questions as soon as possible and before the conference that will be held to discuss setting the remainder of this appeal for hearing on the merits. (See enclosed scheduling notice.)

[3] At least as of 1982, under Mr. Dufresne's ownership, the two structures appear to have been located on a single parcel of land with the address of 154 Main Street; at some subsequent time they may have been divided or at least appear to have acquired two separate street addresses. Neither party has suggested that this issue is material to the application before the Court in this appeal.

[4] Unless there is evidence that oil changes and the painting of motor vehicles occurred in this building as a non-conforming use without having been discontinued for six months between 1981 and 2002, Applicant's proposal to add oil changes or vehicle painting to the non-conforming uses on the property would require the DRB to make a ruling under §§8.402 and 8.404, before it could be considered by this Court.

[5] While the building is described in Mr. Bowers' affidavit as having six connected garages, the 1982 permit application requested an additional 30 feet of length but stated that it would only add one additional overhead door.